The first case this morning is 05-1242 Wechsler v. Macke Intl Trade. Mr. Smith. May it please the court, I represent the defendant of Helen O'Rourke in this case. This case cries out for reversal for several reasons. This was a jury trial held below. The jury found my client, Mr. O'Rourke, not personally liable for infringement of the Wechsler patent. There was a clear jury finding, jury finding number one. Also, there was a jury finding that the defendants willful infringed and when this was typed up, defendants was listed as plural. After the jury decided the case, the court judge specified prepare an order finding Mr. O'Rourke not liable for infringement. The difficulty I'm having is, isn't it correct that the two special verdicts, one and three, are not reconcilable? Well, they are reconcilable if you look at the current case law and you look at the representation that the defendants was listed as plural here. Regarding verdict three, it says yes is a finding for Mr. Wechsler and it says no is a finding for Mr. O'Rourke in the judge's order. She was thinking that defendants met Mr. O'Rourke, but that's not correct. Well, no, but that may not be correct. My question is, doesn't defendants include both Mackey and Mr. O'Rourke? It's in plural, that's what it says. Yes, it is in plural, but if you look at the jury instructions with respect to that, all the jury instructions relating to that repeatedly characterize the defendant as Mackey. And it says, you look at the willfulness with respect to Mackey, it says you look at Mackey's acts. If you look at all of that, it is characterized specifically as Mackey. What about special verdict two, which I realize isn't an issue here, but special verdict two was kind of temporarily just a little different than three, right? Well, it actually, yes, temporary, but it got Mr. O'Rourke off the hook for most of his acts because there was an argument that he had earlier knowledge with respect to that. So it got him off the hook for liability with respect to that as to the majority of the case as the majority of his liability. Well, let me ask you, just back to my earlier point, even if we were to agree with you in terms of having some difficulty with just throwing out special verdict one, wouldn't we still have to send it back for a new trial? Because notwithstanding the oral instruction that you referred to as simply referring to Mackey, there is still some ambiguity in terms of what the jury ultimately did. Well, I don't think so with respect to that, and there's another issue relating to that, and that is when you look at the special verdict form and that inconsistency, the instructions to the jury raise an issue that is related to this DSU case, which the court decided recently with respect to that. The standards required by the jury instructions were too weak with respect to the finding of liability for inducement to infringe. The instruction required only that it's more probable than not, and said that the jury had to find that O'Rourke knew of the patent and that he knew that his encouragement or instructions would likely result in the other person or company infringing. Under the DSU case, the court has said you need to go further and you need to find not just likely to infringe, but actual infringement. The court was very clear that you don't just refer generally to some acts that might infringe, but you actually have to go far to show that. But, Mr. Smith, did you object to those instructions? Well, let me put it this way. We objected to part of those instructions. As to the issue that I'm raising now, the DSU case, which the court decided en banc just a month or so ago, was not that, so it would be inappropriate to object to that part of the instruction under the then law. It may require, as Judge Post mentioned, it may require a remand with respect to that, but there were objections made to the earlier part of that instruction as to that particular part. I would think that was the law at the time, at least with respect to before DSU was decided, so we have somewhat of a conundrum created by that. But given those two things, yes, it may require a remand with respect to that. We would believe that given the clear instructions to the jury and repeated references to Mackey and the judge's early interpretation when the jury came down that the defendant was not liable, and given the standards that it would not require a remand, that it could be reversed with respect to that, with respect to the individual liability of Anthony O'Rourke. Mr. O'Rourke had, and it is in the record with respect to that, with respect to the willfulness finding that Mr. O'Rourke had an opinion of counsel. There were several in the record, several indicia of his belief, his own belief, and what he did to determine that, that there was no infringement and that the patent was invalid. He was at that time relying upon a prior decision, coincidentally of another panel, sometimes they try to assign the same panel, they didn't do it here, but another panel of this court had determined, had reversed a finding by the district court that there was no infringement of two models, Andy Drink II and Andy Drink I were two models of that. The district court said there was no infringement. Mr. O'Rourke, and the company as well, but Mr. O'Rourke was perhaps prescient in seeing no infringement on that and the district court agreed to it. It's pretty hard to say, although he was prescient, that his determination of non-infringement, which the district court agreed with, was incorrect and you could find willful infringement in view of that determination. Understandably, the court reversed it as to part of that element and sent it back for trial, but meanwhile he made that determination. Then he went on with respect to the Andy Drink II, which the court had found not to infringe, and there was no question about that not infringing. The plaintiff alleged that that infringed, and then we get to the issue of lost profit damages. Well, let me ask you quickly about that before your time runs out. On the lost profits, there is some testimony, is there not, from Wexler's expert that there was capacity for Wexler to be manufacturing this. There is testimony based upon the fact that he got a product out, so he could have done that. It's only based upon the fact that he got a product out, not based upon what he had at that time, and there's pretty clear evidence that he did not have the manufacturing capability. It took him six years to get to a product. He didn't get that out until a year after the defendant stopped. There's a lot of evidence of his inability to do that. Yes, his expert did say, well, they got a product out there, but that's really the extent of it. His expert did not look at the fact that he had manufacturing capabilities, various elements like that. You mean that he did not have manufacturing capability. He did not have manufacturing capability. The other issue with respect to lost profits, which I think is pretty clear, is that you need to show the absence of accepted and non-infringing substitutes. In this case, the handy drink 2, which had been held by this court not to infringe, was a substitute. The products were the same. Indeed, it was alleged to infringe by the plaintiff in the context of the case. So I think with respect to the absence of non-infringing uses, it's pretty clear that there were non-infringing uses clearly in this market. Those were selling like hotcakes by the defendant, the handy drink 2 was, and that was in the market, and this is a substitutable product. Mr. Smith, going back to the original issue of whether or not the special verdict 1, special verdict 3 were inconsistent, did you ever file a motion for a new trial at that point? No. At the time, at that point, the case was, the court said, prepare an order where Mr. O'Rourke, my client, was not liable with respect to that. There actually was a non-protect order respected. All of this came up later, so there was not the opportunity to do that at this point. There was the motion filed by the plaintiff seeking to bootstrap the defendant, the individual defendant, back in and essentially reverse jury verdict 1. But no motion for a new trial was ever filed? No, at that point it would not be appropriate to file a motion for a new trial. We won. So you think you waived it? No, not at that point because this issue came up later with respect to that. I think we can certainly raise it with respect to the appeal. After all, we had verdict 3, verdict 2, and the judge's very clear interpretation with respect to 1. Finally, there was an argument made with respect to the non-infringing substitutes that you don't always have to show that. You can use this total market rule where a defendant has, a plaintiff has a percent of the market already with the existence of non-infringing substitutes. This is not the case. The plaintiff had no existing share of the market, so that's exception to the rule. Thank you. Mr. Wexler. Good morning, Your Honors. My name is Robert Wexler. I represent the plaintiff, Clause Appellate Lawrence Wexler. I have a few problems with what was said earlier. First of all, the DSU case, which was mentioned, did not change the law. It reaffirmed what you had said in Manville Sales, which was the state of mind required of the infringer. And that was that the person knowingly induced infringement and had a specific intent to encourage those infringements. That the plaintiff would have to show that O'Rourke induced infringing acts and that O'Rourke knew or should have known his actions would induce actual infringements. And I think we proved that at trial. But DSU was at least an embankment, portions of it, right? And that particular issue was an embankment? Well, the particular issue I think that's in dispute here is what the state of mind of O'Rourke was when he was infringing. And as to that, I don't think the DSU case changed anything. It just merely reaffirmed what the court had said in Manville Sales. It didn't change the amount of intent that he had to have. So you're saying that they should have objected to the jury instructions at that point? Yes, and by not objecting at that time under Rule 50B, they cannot challenge it now. They didn't challenge the jury instructions also. That would be Rule 51. They complained that the jury may have misunderstood the instructions, but they agreed to these instructions. There was no objection made. Who asked for the special verdict to be submitted to the jury? I think it was agreed to by all parties. All parties? It was not just a general verdict request? No, I think we all agreed that that was the way it was going to be handled because of the fact that it was a patent infringement case. Did both sides have an opportunity to review the special verdict forms? Yes, nobody made objections. They were agreed on by all counsel. So the special verdict number three, which does speak in a plural, defendants have willfully infringed, was reviewed by counsel? Yes, and the jury came back with a finding of willful infringement by clear and convincing evidence. Verdict number one, which was just based on preponderance, was the one that we have a little bit of a problem with, and the district court in trying to reconcile the two verdicts, number three and number one, found that verdict number one was not supported by substantial evidence. Mr. O'Rourke nowhere in that trial told what his reasons for his supposed good faith belief was that it was not infringing. The evidence, his actions, spoke differently. As soon as he learned about the patent, he asked his counsel to look for prior art to possibly invalidate the patent. He told his designer, Art Russell, to look into redesigning the product without the hinge number, which was the area where we think he had a problem. He sought a license from the plaintiff. Now why would somebody with a good faith belief that the product was not infringing seek a license? Then we talked about an opinion of counsel. He did seek an opinion of counsel, but counsel only gave him an opinion as to the handy drink two, which was the redesigned model. The handy drink one he refused to give an opinion on. Now that would put a normal person on inquiry notice, maybe I've got a problem here. Then Pat and counsel in negotiating with the plaintiff, this was over the license, talked about an alternative design that Mr. O'Rourke was going to come up with to avoid infringement. It's obvious, and I think this is what the judge and the jury saw, that this was a case of infringement. The only issue really here today is whether special verdict number one is supported by substantial evidence. There could be a willfulness because of a lack of diligence, but the question then as to Mr. O'Rourke would be his specific knowledge that the jury found he didn't have. Well, but the jury did find he had the knowledge. In verdict number three, they found the defendants, both of them, had willfully infringed by clear and convincing evidence. How could they possibly have come up with that type of verdict if Mr. O'Rourke had no liability? On the willfulness? Exactly. Could be for lack of diligence, whereas the other one required specific knowledge, and they could very well have found that he did not specifically have it, and it looked to me like there was some evidence to support that. Well, but the district court judge in throwing out verdict number one said there was no substantial evidence to support it. I mean, going through the record, you can't find any reason that he could have had this supposedly good faith relief. If all his actions spoke otherwise. If we disagree in terms of substantial evidence, do you still have an argument left with respect to harmonization of the two verdicts? Let's assume we were to conclude there was substantial evidence to support special verdict one. Where does that leave us? I think we have a little bit of a problem then, honestly. So then can we, one, fairly assume if it's supported by substantial evidence that there is a way to harmonize special verdict one and special verdict three? In other words, we rely on the fact that the jury must have understood it to just mean Mackie because of the oral jury instruction? Well, the jury instructions kept mentioning both defendants. I can't see how the jury could have misunderstood that. Well, it mentioned defendants in plural. That's what you're referring to. It didn't mention both defendants in terms of singling out O'Rourke and Mackie, but it mentioned defendants in plural with an F at the end, right? Yes, Your Honor. But when it referred to the defendants, it consistently just used Mackie and not O'Rourke, correct? If I remember correctly, Your Honor, when the judge was doing her charge to the jury, she mentioned that when she mentioned Mackie, she would mean both defendants. She kind of used it as a shorthand for both defendants, and I think that might have accounted for some of the confusion. Is that in the record somewhere, or is that in your brief, that she made a statement at the beginning of her, somewhere in her discussion, in her suggestions to the jury, that that was definitionally, that was what she meant? I can't, I'll be honest, I can't point to the spot in the record today, Your Honor. I'm sorry. But as far as the, you haven't talked about special verdict number two, which is the one that everybody had a little bit of a problem with. What happened was there was evidence presented at trial that Mr. O'Rourke learned of this patent much earlier than the April 1999 date. And we think that, for supposition here, that that was what confused the jury a little bit on verdict number one. When they, when they could not, they did not prove, they did not believe that he learned about the patent so much earlier, that that was why they felt, they felt in verdict number one that they were not client and personally responsible. They thought they were talking about the earlier time frame, which was like a year and a half before when he had knowledge from the patent history that the plaintiff's patent was in there. Can I just turn to lost profits? The evidence that you rely on that was in the record to support your view that you had the capacity, I mean, is it your position that you had the capacity to manufacture these products out of Hong Kong at the time? Yes, Your Honor, it was demonstrated at trial by the plaintiff's expert. And that's the testimony at JA 412 and 413 or is there more testimony on those pages? Well, the charge to the jury, the instructions, covered the panda effect, as each one of them, and each one was discussed at length during the trial. The plaintiff's capacity to produce the… But what I'm asking about explicitly is what that testimony was that you had, because there was clearly evidence, was there not, that you didn't have the capacity, that there were problems in the Hong Kong manufacturing end or whatever, so there's clear testimony going the other way, correct? There was testimony going the other way, there's no question about it, but the jury weighed the evidence and felt that there was, I mean, our job here today is just to see whether there was substantial evidence on the record to support a verdict. Exactly, and that's why I'm asking you to show me what that evidence is. Well, the plaintiff himself testified that his factory in Hong Kong could have produced whatever the demand was. It's a large company and they had the full capacity to produce it. Is that the testimony on page 412, 413? Yeah, that's the testimony. So where is it specifically in that testimony that he says they have the… Well, the plaintiff had already sold 100,000 units at that point. Right, that's at line 21, right? Right. In your opinion, did his black slaves have the capacity to market the product? Yes. Right. As he mentioned, he sold over 100,000 units, obviously had the capacity to get it manufactured. So what is it about that testimony that supports your position, the phrase, so he obviously had the capacity to get it manufactured? I'm just trying to figure out what in that testimony you think supports your position. So is it that phrase? I can't find it at this moment, Your Honor, but Mr. Wexler testified at trial that this was the expert's testimony, in his opinion, that he had the capacity. But the plaintiff himself testified earlier that he believed the factory had the capacity. He could have turned out as many units as the demand. And this is the testimony? This is the expert's opinion of the testimony, but there's testimony of the plaintiff that he had capacity, so. If I can just touch on our course appeal for a second. But you don't know where that testimony is? I can't pinpoint it, but if I have my rebuttal, I'll see if I can find the testimony for you. Although the district court found Mr. O'Rourke personally liable for inducing infringement, we believe the court erred in not finding him to be the alter ego of Mackie in the summary judgment. Was there an alter ego determination by the court? On summary judgment, they found that he was not the alter ego. So if he was not the alter ego, then the corporate veil was not pierced, right? That's correct, Your Honor. So he can't be liable as an individual shareholder? Well, he did induce the, what was found was that he was guilty of inducing the corporation to infringe. That what happened was Mackie International was a one-man corporation. He was the sole owner, shareholder, director, only employee. And the trial judge said, since Mackie was found to have willfully infringed, how could the corporation have acted to anybody other than Mr. O'Rourke? He was the only one who worked for Mackie. Well, isn't that the way every corporation acts? Not necessarily. Yes, but sometimes you have multiple employees. In most of the cases that the defendant quotes, there were multiple employees, and the question is how much knowledge and intent each one had. In this case, since the corporation was found clearly to be infringing, it didn't do it by itself. It had to have acted through its officer, director, shareholder, which was Mr. O'Rourke. So we should pierce the corporate veil of any person who incorporates themselves? No, I'm not saying that, Your Honor. What I'm saying is we have evidence here of undercapitalization, Mr. O'Rourke's personal promise to indemnify people who were selling the infringing product, a threat by his counsel. There was no piercing of the corporate veil at that level. No, but I think what we're trying to say is that there was a trial in which it was a fact as to piercing the corporate veil. And it was not concluded? It was not pierced, no, because on summary judgment, that was it. So how can you say that it's pierced then? Even though you're mentioning evidence that would be supportive of piercing the corporate veil, but it was not determinative of piercing the corporate veil. No, we didn't have to pierce the corporate veil. You can show infringing. So an officer of a corporation can induce, can be... Inducing infringement without piercing the corporate veil. This Court has held that many times. I don't have the cite for you, but you can have inducing without piercing the corporate veil. Because it might be just an employee that was responsible, not an owner. Let me save one minute so I can find that case for you. Mr. O'Rourke. With respect to that last argument, you know, what happens here is that you have a small corporation and you have somebody, Mr. O'Rourke, who's acting for the corporation. That doesn't make him liable. The motion that was brought with respect to piercing the corporate veil, the alter ego motion, has a very lengthy opinion going through all the evidence. All of the evidence with respect to that, the uncapitalization, all the arguments that are made here, very clearly with respect to that, does not pierce the corporate veil. There was, this is a case, which I think your Court has to really deal with, where the plaintiff is not in the market. And the plaintiff jumps into the market later on, says, I can get in this business and I should turn what should be a reasonable royalty case into a lost profits case. That's what's going on here. There really is not, if you look at the evidence, there's not really the capability to do that. They were writing letters to their factories saying, you can't get the product out, you can't, we don't need this product, we can't get it. It's pretty clear, and this is really trying to turn what would otherwise be a reasonable royalty case into a lost profit case. With respect to the Court's question regarding the jury instructions, there was dispute over the jury instructions, but even apart from that, it's very clear that, and the Court preserved the objection of the defendant's attorney. The defendant's attorney wanted additional jury verdict findings, 5, 6, 7, 8, there were a whole list of them with respect to that, to tease out the very problem that was here with respect to the specifics of those general verdicts, leaving that out. And that was clearly sought. The Court said, I understand what you wanted, but we're not going to do that with respect to that. The counsel said, well, you know, as evidence of their infringement of their willfulness is, they asked for a license. You know, defendants in cases all the time, private settlement cases, asking for a license, a lot of the evidence they rely upon here comes out of settlement negotiations, which are protected under 403. But I don't think acting for a license to admit somebody infringes, it's useful business to avoid having to come to this Court twice to do that. That does not concede with respect to infringement at all. The Court, in the context of this, as Judge Prost repeated, if you look at those jury instructions that were given to the Court as to the specifics of this, it repeatedly said Mackey. I challenge the other party to find something where the Court said, oh, when we say defendants, we mean both, or when we say Mackey, we mean both parties. The Court never said that. There was not the shorthand with respect to that. Mackey was throughout the instructions, as Judge Prost indicated, was without the instructions with respect to that. There was never any determination. Mr. Smith, why don't you object to the language of the special verdict three? Special verdict three was, look, I was not the trial counsel, but with respect to special verdict three, it was done with respect to that from, I think from, it was done from dictation with respect to that. There were places in the transcript where it says defendant apostrophe S, where it meant to be S with respect to that. I think really the parties, you know, I think neither party really picked it up with respect to that. It certainly wasn't meant to be or intended to be a ticket where the jury, which clearly understood special verdict one, Mr. O'Rourke, is not liable, and they knew what he'd been charged with with respect to inducement to infringe and everything. They clearly checked that box. If anything, there's juries that understand it's, you know, personal liability. This was argued before that. It was a mistake. It was a mistake, Your Honor. It was not intended to be a ticket to stretch jury verdict three to essentially reverse or, in the inconsistent, jury verdict one. Certainly wasn't the opportunity to do that. All right. Thank you, sir. Commissioner? Your Honor, with respect to the questions, you had the capability of a plaintiff to make them out of the quantity that were needed. On page J323, the question, has the factory ever been unable to accommodate those increases? The answer, no, not at all. They have indicated to me that if ever production is required beyond the capacity of a mold because the mold is limited to how many pieces can come out per hour, they will just make two more molds, three more molds, four molds, and just put more people to work and be able to produce as many as they want. But isn't this referring to the period later when they were indeed manufacturing? I mean, there's no question that you were on the market after 2000, what was it, or 2001? Yes. As the plaintiff's expert testified, there is no—this court has also held—it is not a requirement that the production be at the same time as the infringement. As long as the plaintiff could have made the sales, that's under the rules, if he could have made the sales at that time, even though he wasn't ready to, that would still be infringement. Okay. Thank you very much. The case is submitted.